Kurt ROBINSON, Plaintiff,

v.

Vincent CLEMONS, individually, Vincent Clemons, as an employee of the City of Wilmington, David Simmons, individually, David Simmons, as an employee of the City of Wilmington, Mayor and Council of City of Wilmington, a municipal corporation of the State of Delaware, Defendants.

No. CIV.A 96–405 MMS.

United States District Court, D.Delaware.

Jan. 9, 1998.

---

9. Based on plaintiff's counsel's claimed billing rate the multiplier would be 3.14.

James F. Bailey, Jr., Bailey & Whetzel, P.A., Wilmington, DE, for Plaintiff.

John W. Morgan, Assistant City Solicitor, Wilmington, DE, for Defendants.

## *OPINION*

MURRAY M. SCHWARTZ, Senior District Judge.

### INTRODUCTION

On August 7, 1996, plaintiff Kurt Robinson filed a complaint against the City of Wilmington, the Mayor, the City Council members, and Officers Vincent Clemons and David Simmons, alleging various torts and violations of 42 U.S.C. § 1983[1] arising from an arrest of Robinson that occurred on July 19, 1994. The § 1983 claim was grounded in plaintiff's Fourth Amendment right to be free from unreasonable seizure as well as plaintiff's rights under the Fourteenth Amendment Due Process Clause. The unreasonable seizure claim was grounded in two arguments: 1) the officers arrested plaintiff without probable cause; and 2) the officers subjected plaintiff to excessive force. Plaintiff also made a claim for punitive damages. Only defendants Clemons and Simmons were sued in their individual as well as their official capacity. On July 30, 1997, defendants filed a motion for summary judgment, arguing plaintiff had failed to present sufficient evidence to support his claims, and asserting immunity both under the County and Municipal Tort Claims Act, 10 Del.Code

---

**1.** 42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Ann. §§ 4011–4012 (1997), and under the doctrine of qualified immunity.[2]

At oral argument, defendants conceded that plaintiff had raised a genuine dispute as to material facts with respect to the § 1983 excessive force claim and the tort claims of assault and battery and gross negligence against the officers in their individual capacity. Concomitantly, defendants Clemons and Simmons stated they would delay their argument for qualified immunity on the excessive force claim until the issue is ripe for review.[3] Consequently, defendants' motion for summary judgment will be denied without discussion on these claims.

At the same time, plaintiff conceded he could not raise a genuine dispute as to the existence of a policy or custom necessary to hold the governmental entity or any of the individual defendants liable in their official capacity under § 1983. Further, plaintiff conceded that under the § 1983 claim, the Mayor, City Council, and City of Wilmington could not be subjected to respondeat superior liability. Plaintiff also acknowledged he could not raise a genuine dispute as to the commission of an intentional tort by the Mayor, City Council, and City of Wilmington. Finally, plaintiff recognized that all defendants were immune under the County and Municipal Tort Claims Act from a claim of negligence that is based on the allegations of this case.[4] Consequently, defendants' motion for summary judgment will be granted without discussion on these claims.

The remaining disputed issues are: 1) whether the City of Wilmington may be held liable for the alleged gross negligence or assault and battery of the officers based on a theory of respondeat superior; 2) whether the defendants are entitled to summary judgment on plaintiff's Due Process Clause claims; 3) whether there is a genuine factual dispute as to the Fourth Amendment claim of unreasonable arrest based on lack of probable cause; and 4) whether plaintiff may pursue a claim for punitive damages against any remaining defendants in their official capacity. For the reasons that follow, defendants' motion will be granted in part and denied in part.

## STATEMENT OF FACTS

On July 19, 1994, an employee from the Department of Motor Vehicles (DMV) called the police and reported that a man who was black and wearing a black t-shirt and blue pants was trying to register a stolen vehicle. D.I. 18 at 000042.[5] Officers Clemons and Nyzio responded to the call and, upon entering the Department, saw a man who matched this description. Id. at 000031. While Officer Nyzio talked with the suspect, a DMV employee erroneously told Officer Clemons that the man who had tried to register the stolen vehicle had just left and was getting into a white car, referring to Robinson, who was getting into his white car. Id. at 000031, 000042. Officer Clemons followed Robinson, who had moved his car and parked it around

2. In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738.

3. Whether the law was clearly established at the time of the incident is purely a legal question. See Sharrar v. Felsing, 128 F.3d 810, 827 (3d Cir.1997); Rogers v. Powell, 120 F.3d 446, 455 (3d Cir.1997) (quoting Acierno v. Cloutier, 40 F.3d 597, 609 (3d Cir.1994)). In addition, it is a question of law whether the officials acted reasonably given established precedent. See Sharrar, 128 F.3d at 828. However, if the conclusion as to whether a reasonable officer could have believed the conduct was lawful requires resolu-

tion of a genuine factual dispute over the nature of the conduct, the resolution of the dispute is left for the jury. See id.; Karnes v. Skrutski, 62 F.3d 485, 491–492 (3d Cir.1995). See also Johnson v. Jones, 515 U.S. 304, 312–313, 319–320, 115 S.Ct. 2151, 2155–2156, 132 L.Ed.2d 238 (1995) (holding that although the question of whether a given set of undisputed facts violates clearly established law is a question for the court and is appealable, the question of whether a genuine dispute exists as to facts affecting that determination is not appealable).

4. See infra, note 6 describing the exceptions to a municipality's immunity for negligence.

5. In the end, it turned out the alleged illegal registration was based on a mistake by a DMV employee so no illegal activity had occurred at all.

the block. Id. at 000031, 000038–39. Robinson had been parked in a handicapped spot and, having seen the officers arrive, was concerned he would get a ticket. Id. As Robinson was walking back from his car to the Department, Officer Clemons approached him. Id. at 000031. Although Robinson did not present a threat to the officers (i.e., he made no threatening move and gave no indication he had a weapon), Officer Clemons walked towards him with a gun pointed at him. Id. at 000032, 000042. Officer Clemons ordered Robinson to put his hands on the car, id. 000042, 00047, and he complied. Id. at 000032, D.I. 20 at 22.

By this time, Officer Simmons had arrived. Id. at 000047. The Officers pressed the defendant against the vehicle and tried to grab his shoulders and arms in order to handcuff him. D.I. 18 at 000032, 000043, 000047. The plaintiff was not trying to flee, D.I. 18 at 000033, and was not acting violently towards the officers during the arrest. Id. at 000032, D.I. 20 at 22. Nevertheless, Officer Clemons struck the plaintiff in the head with his blackjack six or seven times. D.I. 18 at 000032; D.I. 20 at 22. Although Officer Simmons did not strike the plaintiff, he was holding the plaintiff and had unsuccessfully attempted to use his own blackjack. D.I. 18 at 000047–48. The plaintiff was taken by ambulance to the emergency room and received fourteen stitches for his head injury. D.I. 18 at 000043–44, D.I. 20 at 22. At no point had the officers explained why the plaintiff was under arrest. D.I. 20 at 22. Although the officers charged plaintiff with menacing, assault 3rd degree, resisting/hindering a police officer, and resisting arrest, a judge acquitted the plaintiff on all charges. D.I. 18 at 000031–34.

### STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, the Court shall grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

*Anderson v.. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine only if a reasonable jury could return a verdict for the nonmoving party. *See id.* When considering a motion for summary judgment, the Court must "view all facts and inferences in the light most favorable to the party opposing the motion." *Stephens v. Kerrigan,* 122 F.3d 171, 176–177 (3d Cir.1997). The Court has followed this principle in reciting the above statement of facts.

The Supreme Court has clarified that the moving party must "bear the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After such a demonstration has been made, however, the nonmoving party must go beyond the pleadings and, based on the same types of evidence, must demonstrate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. The nonmoving party cannot rest on his allegations without "any significant probative evidence tending to support the complaint." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). *See also Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (stating that a non-moving party must "adduce more than a scintilla of evidence in its. favor ... and cannot simply reassert factually unsupported allegations contained in its pleadings").

### DISCUSSION

**I. Respondeat Superior Liability under the County and Municipal Tort Claims Act**

The County and Municipal Tort Claims Act, 10 Del.Code. Ann. § 4011(a), generally immunizes all governmental entities and their employees from suit on any and all tort claims seeking recovery of damages. The

Act states that a governmental entity shall never be liable for "[t]he performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute, ... regulation or resolve under which the discretionary function or duty is performed is valid or invalid." 10 Del.Code Ann. § 4011(b). There is no dispute that at the time of the incident in question, the officers were engaging in a discretionary function. Further, the exceptions that apply to governmental entities, delineated in 10 Del.Code Ann. § 4012, are inapplicable to the case at bar.[6]

■ Plaintiff argues, however, that § 4011(c), which provides exceptions to the immunity granted employees, incorporates the concept of respondeat superior liability. This subsection states:

> An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

10 Del.Code Ann. § 4011(c). Contrary to plaintiff's assertion, the courts have held this section was not intended to strip the governmental entity of its immunity. *Smith v. Commissioners of Dewey Beach,* 685 F.Supp. 433, 435 (D.Del.), *aff'd,* 866 F.2d 1413 (3d Cir.1988); *Farris v. Moeckel,* 664 F.Supp. 881, 896 (D.Del.1987); *Schueler v. Martin,* 674 A.2d 882, 886–888 (Del.Super.1996). These holdings are unsurprising in light of the fact that the language of this subsection addresses only employees and specifically states that it applies in "instances in which the governmental entity is immune." 10 Del. Code Ann. § 4011(c). In addition, given the sweeping immunity granted by the Tort Claims Act, the more reasonable interpreta-

tion is that the exception refers only to direct liability, not to derivative liability. Moreover, this exception states it only attaches to those acts "which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent." 10 Del.Code Ann. § 4011(c). Because the first clause would automatically preclude respondeat superior liability, which requires that the employee acted within the scope of employment, this language further supports the Court's restrictive interpretation of the exception. For all of these reasons, summary judgment will be granted for the City of Wilmington on plaintiff's tort claims.

## II. Unreasonable Arrest Claim

### A. Due Process Clause

The plaintiff's complaint and briefs did not specify the nature or basis of plaintiff's due process claim and, at oral argument, plaintiff did not clarify if he was seeking relief based on substantive or procedural due process. The plaintiff did make clear, however, that the underlying basis of his due process claims is the same as for his Fourth Amendment claims, i.e., unreasonable arrest based on excessive force and lack of probable cause. Although the Court will assume for purposes of this decision that plaintiff is proceeding on both procedural and substantive due process arguments, plaintiff's due process claims must fail.

■ In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that claims of excessive force at the hands of law enforcement officers during an arrest, investigation, stop or other seizure of a free citizen should be analyzed under the Fourth Amendment not under the substantive protections of the Due Process Clause. *See id.* at 395, 109 S.Ct. at 1871. Although the *Graham* Court was specifically addressing an excessive force claim,

6. Section 4012, Exceptions for immunity, states: a governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:
(1) In its ownership, maintenance or use of any motor vehicle....
(2) In the construction, operation or maintenance of any public building ....
(3) In the sudden and accidental discharge, ... of smoke ....
10 Del.Code Ann. § 4012.

the Supreme Court later clarified that such reasoning applies to unreasonable seizure claims in general. *See Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In *Albright,* the Court explained that "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" 510 U.S. at 273, 114 S.Ct. at 812 (quoting *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871). Because the Fourth Amendment was designed to address pretrial deprivations of liberty in the criminal sphere, the Fourth Amendment, not substantive due process, must govern a "no probable cause" claim. *Albright,* 510 U.S. at 274–275, 114 S.Ct. at 813–814. *Albright's* reasoning and holding has been extended to the procedural due process context as well. *See, e.g., Pino v. Higgs,* 75 F.3d 1461, 1469 (10th Cir.1996). As a result, the Court will grant defendants' motion for summary judgment on plaintiff's claims based on the Due Process Clause.

## B.  Fourth Amendment

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court explained that "seizures" under the Fourth Amendment occur when law enforcement officials have "by means of physical force or show of authority . . . in some way restrained the liberty of a citizen." *Id.* at 19 n. 16, 88 S.Ct. at 1879 n. 16. *See also United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (holding that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in

view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. . . .").

The parties do not challenge and the Court does not doubt that at the moment Officer Clemons had trained his gun on Robinson, Officer Clemons had "restrained [his] liberty." *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1880 n. 19. Any reasonable person "would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. at 544, 100 S.Ct. at 1870. At that point, Robinson had been "seized," thereby triggering the protections of the Fourth Amendment. The parties also do not contest that Officer Clemons had reasonable suspicion to effectuate an investigatory stop;[7] that is, the officer had a reasonable basis to "to try to obtain information confirming or dispelling" his suspicions.[8] *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984). The plaintiff argues, however, that there was insufficient evidence to warrant an arrest.

■ A police officer must have probable cause to arrest someone. *Terry,* 392 U.S. at 20, 22, 88 S.Ct. at 1879, 1880. *See also Dunaway v. New York,* 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979) (stating that lengthy detentions beyond investigatory stops must be "based on consent or probable cause") (quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 881–882, 95 S.Ct. 2574, 2580–2581, 45 L.Ed.2d 607 (1975)). "Probable cause" means there are facts "sufficient to warrant a belief that the [suspect] has committed or is committing a crime." *Id.* at 26, 88 S.Ct. at 1882. "Probable cause" has also been defined as a "fair probability," *Sokolow,* 490 U.S. at 7, 109 S.Ct.

---

7.  *Terry* held that investigatory stops are permissible absent probable cause, as long as the officer is able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879. In other words, the officer must "reasonably . . . suspect" that a particular person has committed, is committing, or is about to commit a crime. *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). *See also Terry,* 392 U.S. at 30, 88 S.Ct. at 1884 (officer must have reasonable belief that "criminal activity may be afoot. . . ."). "[I]narticulable hunches" are not enough, *Terry,* 392 U.S. at 22,

88 S.Ct. at 1880, but the required level of suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." *Unites States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).

8.  Although one could argue that Officer Clemons's investigatory stop was not reasonably related in scope to the justification for the intrusion, as required by *Terry,* 392 U.S. at 29, 88 S.Ct. at 1883, such concerns go to the existence of probable cause for an arrest and to the possible use of excessive force, not to the validity of the initial stop.

at 1585, or a "substantial chance," *Illinois v. Gates*, 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983), of criminal activity. Although the facts may not be sufficient to establish guilt at trial beyond a reasonable doubt, they may still be sufficient to establish a lawful arrest. *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959), *discussed in Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir.1994). The basis for probable cause in the instant case was not specifically addressed in the briefs; however, Officers Clemons and Simmons asserted at oral argument that the DMV employee's indication of Robinson as the suspect provided probable cause for the arrest.

In *Gates*, the Supreme Court held that the determination of whether an anonymous tip could provide the basis for probable cause had to be made based on the totality of the circumstances.[9] *See Gates*, 462 U.S. at 230, 103 S.Ct. at 2328. The totality of the circumstances includes such factors as the informant's reliability, veracity, and basis of knowledge. *See id.* A court must look to the content of the information as well as its degree of reliability, i.e., both the quantity and the quality of the information. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). Further, a deficiency in one aspect of the tip may be compensated for by strength in another aspect of the tip or by other information. *Gates*, 462 U.S. at 213, 103 S.Ct. at 2317. For example, if a tip has a somewhat low level of reliability, more information is required to establish probable cause. *White*, 496 U.S. at 330, 110 S.Ct. at 2416. Whether the totality of the circumstances has established probable cause must be determined by reviewing information gleaned from the officers' independent investigation as well as the reliability and substance of the informant's tip. *Gates*, 462 U.S. at 241–244, 103 S.Ct. at 2333–2335.

In *Gates*, the anonymous tipster had informed the police about future, drug-related activity in extensive detail and the police had verified the information before obtaining a search warrant. 462 U.S. at 225–226, 103 S.Ct. at 2325–2326. Stressing the predictive nature of the information and the strong corroboration that had occurred, the Supreme Court held probable cause had existed for the warrant. 462 U.S. at 226, 103 S.Ct. at 2325.

In most cases applying *Gates*, courts have found probable cause when there have been facts beyond the lay person's tip that gave the police reason to suspect illegal activity and when there has been corroboration of the information contained in the tip. *See, e.g., Sherwood v. Mulvihill*, 113 F.3d 396 (3d Cir.1997); *United States v. Butler*, 74 F.3d 916 (9th Cir.1996); *United States v. Mills*, 29 F.3d 545 (10th Cir.1994); *United States v. Williams*, 3 F.3d 69 (3d Cir.1993); *U.S. v. Belle*, 593 F.2d 487 (3d Cir.1979). For example, in *Williams*, a housekeeper informed police that two males had rented adjoining rooms, had paid cash for the rooms and other hotel services, and had displayed a large roll of cash, the majority of which consisted of 100 dollar bills. *See* 3 F.3d at 70. The two individuals were also observed re-entering their rooms throughout the day with a specific, coded knock. *See id.* at 71. Further, the housekeeper saw one of the men on several occasions meet in the hotel parking lot with unidentified persons who remained in their vehicles. *See id.* When cleaning one of their rooms, the housekeeper found small plastic bags, which she said looked like the bags she saw on TV related to drug deals, in addition to finding cigarette rolling paper. *See id.* The housekeeper had been refused admittance to clean that room until a box was removed and taken into the adjoining room. *See id.*

When the police identified the men described by the housekeeper and ran a crimi-

---

9. *Gates'* totality of the circumstances approach replaced a two-prong test for determining if an informant's tip established probable cause. 462 U.S. at 233, 103 S.Ct. at 2329. The prior test had required a court to find both a basis for the informant's knowledge and facts sufficient to establish the informant's veracity or reliability,

without allowing the court to counter the weakness of one prong with either the strength of the other prong or other corroborating information. *See Spinelli v. Unites States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). ·

nal check, they found both men had a criminal history of convictions for felony drug offenses and both men had aliases. *See id.* The police also concluded the actions described above fit the profile of people involved in drug transactions. *See id.* Based on all of this information, the court issued a search warrant. *See id.*

Relying on *Gates,* the Third Circuit Court of Appeals stated that although the police officers' bare assertion that they believed the housekeeper to be reliable did "not alone suffice," the assertion did demonstrate the police had no reason to doubt her reliability. *See* 3 F.3d at 72. The court added there was ample reason to believe the housekeeper had no relationship to the men and no ulterior motive, thereby giving the information significant reliability. *See id.* at 73. The court also emphasized the police had somewhat corroborated the report of drug activity with independent investigation. *See id.* The court concluded that "based on this corroboration, the apparent disinterestedness of the informant, and the absence of any information suggesting unreliability," the magistrate was entitled to credit the housekeeper's information. *Id.* Although recognizing each piece of information could be explained with innocent activity, taken together, the Court held they provided probable cause to believe drug activity was taking place. *See id.*

There has been, however, at least one case decided by the Third Circuit Court of Appeals in which probable cause was found even though there was no information afforded the police other than a victim's tip.[10] *Government of the Virgin Islands v. Williams,* 739 F.2d 936 (3d Cir.1984). In *Williams,* a woman noticed an unknown man sitting in a yellow-orange, beat-up Mazda near her home and he told her he was waiting for a "jump." *See id.* at 937. Less than a minute later, she entered her home and found that it had been burglarized. *See id.* The woman immediately told one of her sons about the man in the car and her son ran outside to look for him, but both the man and his car were gone. *See id.* At that time, the woman telephoned police and reported the burglary and the

suspicious individual, describing both his car and his appearance. *See id.*

Within thirty minutes of receiving the transmission of this information over the police radio, an officer saw a yellow Mazda about two miles away from the site of the burglary, pointing in a direction away from the site. *See id.* at 939. The driver of the car fit the description of the suspect but there were two other males in the car as well. *See id.* Based on this information, the officer arrested the individuals. *See id.*

The Third Circuit Court of Appeals held that, under the totality of the circumstances test, the evidence "amply support[ed] a finding of probable cause. . . ." *See id.* The court noted that the officer's actions were based on a report from a citizen "whose honesty the police had no reason to question." *Id.* In addition, the victim's information was corroborated for the most part by the police officer's own observations. *See id.* The fact that there were three individuals instead of one did not necessarily undermine a valid finding of probable cause because the officer could have reasonably inferred the suspect had been joined by his accomplices. *See id.* (citing *Bailey v. United States,* 389 F.2d 305, 309 (D.C.Cir.1967)).

■ In light of this background, the Court turns its attention to the instant case. It is undisputed that when Officers Clemons and Nyzio responded to the DMV, they found a suspect who fit the exact description that had been given by a DMV employee over the phone regarding an individual who was allegedly attempting to register a stolen vehicle. However, it is also uncontroverted that a DMV employee erroneously told Officer Clemons the suspect had just left and gotten into a white vehicle, referring to Robinson and his car. Further, as was true in both *Williams* cases, Officer Clemons had no reason to doubt the veracity of the informant in this case—the DMV employee. There was no evidence she knew Robinson or had a motive to lie.

However, starkly unlike the officers in both of the *Williams* cases, Officer Clemons

---

**10.** The veracity of a victim is less carefully scrutinized and approached with less skepticism than that of an anonymous informer. *See Sharrar,* 128 F.3d at 818.

did have good cause to doubt the reliability of the employee's information. Immediately upon entering the DMV, Officers Clemons and Nyzio apprehended a man who fit the exact description of the suspect identified over the phone—a description Robinson did not fit.[11] In addition, upon stopping Robinson, neither Officer Clemons nor Officer Simmons did any investigatory work to confirm the allegation. They could have questioned Robinson while running his car identification number through the computer and conducting a criminal background check on him, but they did not. Nor did they ask him any questions to which he could have provided answers to confirm or dispel the employee's charge. There is no evidence that Robinson attempted to flee or otherwise prevented the officers from pursuing such potentially corroborating information prior to effectuating the arrest. Finally, the police officers have not offered any evidence that the defendant engaged in any suspicious behavior which independently may have confirmed or added to the charge made by the employee.

Although the test of probable cause employed by the Supreme Court in its *Aguilar* decision is no longer applicable,[12] the *Gates* Court affirmed its holding in *Aguilar*. *Gates*, 462 U.S. at 239, 103 S.Ct. at 2332. *Aguilar* held that an officer's statement that " '[a]ffiants have received reliable information from a credible person and do believe' that heroin is stored in the home" was inade-

quate to establish probable cause. *Aguilar*, 378 U.S. at 109, 115, 84 S.Ct. at 1511, 1514.

Officers Clemons and Simmons were allowed to ask Robinson a reasonable number of questions "to determine his identity and to try to obtain information confirming or dispelling [their] suspicions." *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984). However, unless this or other information provided probable cause to arrest Robinson, he had to be released. *See id.* at 439–440, 104 S.Ct. at 3149–3150. Robinson has certainly raised a genuine dispute as to whether such information existed.[13]

The Court is confident that, based on the totality of the circumstances, the plaintiff has more than raised a genuine factual dispute over whether probable cause existed. Officers Clemons and Simmons' motion for summary judgment on the Fourth Amendment unreasonable seizure claim based on lack of probable cause for an arrest will be denied.

## III. Punitive Damages

### A. § 1983 Claims

■ In *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), the Supreme Court held a municipality is immune from liability for punitive damages under § 1983. In *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), the Supreme court clarified that puni-

**11.** This fact also distinguishes this case from *Sharrar*, in which there was no evidence the arresting officer was aware of any of the conflicting evidence about the identity of the perpetrator, who had been identified by the victim. *See* 128 F.3d at 818.

**12.** *See supra* note 9.

**13.** Although at oral argument the defendants focused on the DMV witness' identification of Robinson, the defendants also mentioned that Robinson had moved his car from a handicapped parking spot to the street. However, there is no evidence in the officers' affidavits or otherwise in the record that the officers knew at the time Robinson had been parked illegally or that the officers arrested him for that violation. On the contrary, all of the record evidence points to the alleged illegal registration as the basis for the arrest. Moreover, common sense dictates that had the illegal parking been the basis for the

stop, the officers would have issued Robinson a ticket rather than arrest him.

Further, although defendants did not make this assertion at oral argument, the defendants' briefs discuss, with respect to the excessive force claim, an alleged struggle by Robinson which occurred during the attempt to handcuff him. Of course, any argument that this alleged struggle provided probable cause is inherently flawed. The alleged actions of Robinson which led to the charges of menacing, assault, and resisting arrest, of which he was acquitted, occurred according to the officers's own affidavits after the officers attempted to effectuate an arrest. As a result, these actions could not have provided probable cause to initiate the arrest. Moreover, even if the Court were to accept the officer's statement that the plaintiff asked what he did wrong and did not immediately comply with the command to put his hands on top of the vehicle, this information does not corroborate the suspicion that he had attempted to register a stolen vehicle.

tive damages are available against a defendant only in his individual capacity in cases brought pursuant to § 1983, and then only when the defendant is motivated by "evil motive or intent" or acts with "reckless or callous indifference to the federally protected rights of others." *Id.* at 56, 103 S.Ct. at 1640. *See also Keenan v. City of Philadelphia*, 983 F.2d 459 (citing *Smith* standard). However, because the Mayor, City of Wilmington, County Council members, and officers in their official capacity are no longer subject to suit by plaintiff, the issue of punitive damages with respect to these defendants in their official capacity is now moot. The potential for punitive damages against defendants Clemons and Simmons in their individual capacity remains.

## B. State Claims

The standard for punitive damages under state law was established in *Jardel Co. v. Hughes*, 523 A.2d 518 (Del.1987). The Delaware Supreme Court held that punitive damages are to be imposed when the defendant's conduct is "outrageous, because of evil motive or reckless indifference to the rights of others." *Id.* at 529 (citing Restatement (Second) of Torts 908 cmt. b (1979)). The court explained these terms generally "parallel the willful and wanton standard." *Id; see also Wiers v. Barnes*, 925 F.Supp. 1079, 1095 (D.Del.1996) (quoting the *Jardel* standard). However, the punitive damages issue regarding the Mayor, the City of Wilmington, the County Council members and Officers Clemons and Simmons in their official capacity is moot as to the state claims as well. The potential for punitive damages against defendants Clemons and Simmons in their individual capacity remains.

## CONCLUSION

Summary judgment will be granted for the City of Wilmington on all of the plaintiff's tort claims. Summary judgment will be granted for defendants Clemons and Simmons in their individual capacity on plaintiff's Due Process claims. Summary judgment will be denied for defendants Clemons and Simmons in their individual capacity on plaintiff's Fourth Amendment claim based on probable cause to effectuate an arrest. The motion for summary judgment as to punitive damages against the City of Wilmington and the individual defendants in their official capacity is now moot. The issues remaining for trial are whether defendants Clemons and Simmons, in their individual capacity: 1) violated plaintiff's Fourth Amendment rights by arresting him with excessive force; 2) violated plaintiff's Fourth Amendment rights by arresting him without probable cause; 3) committed the tort of assault and battery; and 4) committed the tort of gross negligence.