3 F.3d 69
 UNITED STATES of America, Appellant,
v.
Dante Renault WILLIAMS a/k/a Pierre Robinson, Seth Robert
Floyd a/k/a Bear, a/k/a Frederick Fraizer Dario
Stevenson a/k/a Maurice Watkins, a/k/a
Maurice Parks.
 No. 92-3677.
 United States Court of Appeals,
Third Circuit.
 Argued May 20, 1993.
Decided Aug. 23, 1993.
 
 Thomas W. Corbett, Jr., U.S. Atty., Michael L. Ivory (argued), Asst. U.S. Atty., Pittsburgh, PA, for appellant.
 Kim Wm. Riester (argued), Scott, Vogrin & Riester, Pittsburgh, PA, for appellee Dante Renault Williams.
 Before: STAPLETON and ALITO, Circuit Judges, and POLLAK, District Judge*.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 Appellee, Dante Renault Williams, was charged in a multi-count indictment with a variety of narcotics related offenses. He promptly moved to suppress the fruits of a warrant-authorized search of Rooms 331 and 333 at the Greentree Holiday Inn by members of the Police Department of Greentree, Pennsylvania. After a hearing, the district court granted his motion to suppress. On the same day, the government filed this interlocutory appeal under 18 U.S.C. Sec. 3731. We are presented with two issues: whether probable cause existed to support issuance of the warrant, and whether the executing officers' reliance on the warrant's validity was objectively reasonable.
 
 I.
 
 2
 The affidavit submitted by the police in support of their application for a search warrant reported in its entirety:
 
 
 3
 On October 5, 1989, these Affiants received information from a housekeeper at the Holiday Inn, Green Tree [sic], that the occupants of rooms 331 and 333 are engaged in illicit drug dealing.
 
 
 4
 The anonymous informant, which the Affiant's [sic] believe to be reliable, advised that two black males, one from California, had rented two adjoining rooms, paying cash for the rooms, in addition to other hotel services. The informant saw one of the two display a large roll of paper currency, the majority of which were 100 dollar bills. They were also observed leaving room 331 or 333 individually, and upon returning, knocking on the room door in a distinctive 'coded' manner, that being two knocks, a pause, followed by three more knocks. This manner of leaving and reentering the room continued throughout the day.
 
 
 5
 The informant also observed one of the room occupants meet on several occasions in the hotel parking lot with unidentified persons who remained in their vehicle throughout the meeting. When they returned to their room, the [sic] entered with the before mentioned "coded" knock.
 
 
 6
 It was also learned that the housekeeper, when attempting to clean rooms 331 and 333 observed small plastic baggies, in addition to cigarette rolling papers. She described the plastic baggies as similar to those she recognized while watching a news segment about drug sales, that are commonly used by drug dealers. These items were observed only after the housekeeper was refused admittance to clean the room until a box of unknown content was removed by the occupants from the room to be cleaned, into the adjoining room.
 
 
 7
 These Affiant's [sic] investigation reveals that rooms 331 and 333 were rented to Darin Birts, B/M, D.O.B. 12/4/64, California operator's licence [sic] number C2064168 [sic], 5625 Blackwedger St., Los Angeles, CA 90019. A criminal history check of this individual revealed several aliases, along with at least two convictions on felony drug offenses on 9/7/86, and 10/14/86, both of which resulted in prison sentences.
 
 
 8
 These Affiant's [sic] request a search warrant to be issued on the above-mentioned information from an anonymous informant which these affiants recognize as fitting the profile of individuals involved in drug transactions. In addition to fitting the profile of drug dealers, is the fact that Darin Birts [sic] criminal history includes felony drug convictions. (App. 22 and 214-5).
 
 
 9
 In reliance on this affidavit, the magistrate issued a warrant authorizing a search of the motel rooms and seizure of "[a]ll drugs, drug paraphernalia, cash money, [and] weapons."[1] The warrant was executed in accordance with its terms.
 
 
 10
 The district court concluded that the affidavit did not provide probable cause to believe contraband or evidence of crime would be found in the motel rooms. It further concluded that the reliance of the executing officers was not objectively reasonable under the circumstances because "they should have known that the warrant was supported [only] by a barebones, essentially uncorroborated, affidavit of probable cause." Our review of the district court's conclusions is plenary.[2] We disagree with both conclusions.II.
 
 
 11
 The principles governing the first issue before us are set forth in Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983):
 
 
 12
 The task of the issuing magistrate is simply to make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed.
 
 
 13
 Moreover, "after-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take on the form of de novo review," according to Gates. "A magistrate's determination of probable cause should be paid great deference by reviewing courts." Id. at 236, 103 S.Ct. at 2331. We believe a reasonable magistrate following Gates' "common sense," totality of circumstances approach could well conclude that he had been presented with probable cause. Accordingly, we must vacate the district court's suppression order.
 
 
 14
 To us, the most reasonable reading of the affidavit is that the "the anonymous informant" referred to in the second sentence is the Holiday Inn "housekeeper" referred to in the immediately preceding sentence. This is strongly suggested by the proximity of the two references and the use of a "the" rather than an "an" before the second reference. It seems confirmed by the facts, reflected on the face of the affidavit, that (1) the housekeeper was a police informant in this matter whose name was not reported; (2) a housekeeper would be in a position to observe what the "informant" observed and reported; (3) it would be highly unlikely that anyone other than a housekeeper or a member of the party occupying Rooms 331 and 333 could have observed all that the informant reported; and (4) a member of the Birts party undoubtedly would have reported more information than the "informant" reported and would not have reported it from the outsider perspective employed by the "informant." While it is conceivable to us that the informant was someone other than the housekeeper as the district court speculated, we do not think such a conclusion flows from a common sense reading of the affidavit.
 
 
 15
 Once the anonymous informant is understood to be the housekeeper, we believe the affidavit offers substantial evidence supporting the reliability of the information received by the Greentree Police. While we agree with the district court that the bare assertion by the police affiants that they believed the housekeeper to be reliable does not alone suffice, that assertion does indicate that the police had no information which caused them to doubt the housekeeper's reliability. More importantly, the affidavit offers affirmative evidence that the source of the affiants' information was akin to the proverbial "disinterested witness" whose reliability has been celebrated through the years in countless closing arguments and jury instructions.
 
 
 16
 The importance attributed in cases like Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), to affirmative evidence of an anonymous informant's reliability led to the common practice of including in search warrant affidavits, whenever possible, a statement that the informant had given reliable information on earlier occasions. Even where the information tendered consisted solely of the uncorroborated report of an anonymous informer, probable cause would normally be found to exist where a law enforcement officer was able to say that the informant had provided reliable information in other matters. As Gates subsequently made clear, however, reliable tips in other matters should not be understood to be the only way that the reliability of an anonymous source can be established.[3] In particular, we believe evidence that an anonymous informant is unlikely to have an ulterior motive in the instant case provides greater assurance of reliability than does evidence indicating the informant has been reliable in other matters.
 
 
 17
 We know from the affidavit in this case that the informant was a motel employee and that the information supplied concerned observations which a housekeeper might well make in the course of her work. The magistrate was entitled to take judicial notice that guests in a Holiday Inn are likely to be temporary visitors who reside elsewhere. In this instance, it appears likely from the affidavit that the guests came from as far away as California. Based on these facts, the magistrate was entitled to infer that the housekeeper and the guests, more likely than not, had no relationship other than that of motel housekeeper and motel guest and, accordingly, that the housekeeper, more likely than not, had no motive to supply the police with fabricated information about the guests.
 
 
 18
 In assessing the housekeeper's reliability, the magistrate also was entitled to rely on the fact that the housekeeper's report of drug activity was corroborated to some degree by the independent investigation of the police which uncovered Birts' drug record. Based on this corroboration, the apparent disinterestedness of the informant, and the absence of any information suggesting unreliability, we believe the magistrate was entitled to credit the housekeeper's information.
 
 
 19
 The question remains, of course, whether the information supplied by the housekeeper and the information discovered in the ensuing investigation provided a substantial basis for the magistrate to believe that contraband or evidence of a crime probably would be found in the motel rooms. We conclude that it did. The affidavit stated that the occupants of Rooms 331 and 333(1) regulated entries to the rooms through a coded knock; (2) excluded the housekeeper from one of the rooms until a box could be removed from the room to be cleaned; (3) had in their possession items (i.e., small plastic bags and cigarette rolling papers) which frequently are used in the marketing and consumption of drugs; (4) engaged in repeated contacts in the hotel parking lot with persons who remained in their vehicles; (5) possessed large amounts of cash and used only cash to pay for the rooms and hotel services; and (6) included a person who utilized several aliases and only three years earlier had been convicted of drug felonies which resulted in the imposition of prison sentences. We agree with the district court that innocuous explanations could exist for each of these phenomena in isolation. Moreover, we acknowledge that even taken in combination, they do not prove beyond doubt that the occupants were guilty of a crime. The magistrate was entitled to infer, however, that the occupants probably were engaged in illegal activity, that the illegal activity probably involved drug trafficking, and that, more likely than not, a search of the rooms would reveal drugs, drug paraphernalia, illegally generated cash, and/or weapons.
 
 III.
 
 20
 Even were we persuaded that the affidavit failed to provide probable cause, however, we nevertheless would be required to reverse the district court's suppression order. The general rule that evidence seized without probable cause should be suppressed is designed to deter unlawful police conduct. United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405, 3411, 82 L.Ed.2d 677 (1984). "[W]hen an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and [has] acted within its scope," suppression of the fruits of the search because the warrant was issued without probable cause will serve only marginal deterrent purposes which do not justify the substantial costs of exclusion. Id. at 920, 922, 104 S.Ct. at 3419, 3420. Suppression therefore is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority.
 
 
 21
 The Supreme Court has further taught that " 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.' " Id. at 922, 104 S.Ct. at 3420 (quoting from United States v. Ross, 456 U.S. 798, 823, n. 32, 102 S.Ct. 2157, 2172, n. 32, 72 L.Ed.2d 572 (1982)). "In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination." Id. 468 U.S. at 921, 104 S.Ct. at 3419. In the absence of factors not present here,[4] an officer who executes a search in reliance on a warrant engages in objectively unreasonable behavior only if a reasonably well-trained officer would realize that the underlying affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 923, 104 S.Ct. at 3421 (quoting from Brown v. Illinois, 422 U.S. 590, 610-11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)).
 
 
 22
 It necessarily follows from the views we have expressed in the preceding section that we consider the officers' reliance on the warrant in this case to be objectively reasonable. Because of the frequency with which objective good faith issues arise in the district courts, however, we have deemed it prudent also to record our view of the manner in which the district court in this case applied the teachings of Leon. The district court's analysis of the good faith exception issue calls for a far more sophisticated analysis from law enforcement officers than is required by Supreme Court precedent. This is not a case in which the affidavit contained mere conclusory assertions or a single piece of evidence which the law of the stationhouse shop would recognize as clearly insufficient. The affidavit in this case presented a number of specific facts tending to show the presence of illegal activity in the motel rooms, and those facts presented the magistrate with the judgmental task of evaluating their cumulative significance and testing it against the legal standard of probable cause. When judgment calls of this kind are required, we believe Leon teaches that officers are entitled to rely on the magistrate's finding of probable cause.
 
 IV.
 
 23
 The district court's order suppressing the fruits of the search of Rooms 331 and 333 will be reversed.
 
 
 
 *
 Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 We reject Williams' contention that the authority to search was expressed in such general terms that it was constitutionally infirm. See, e.g., United States v. Morisse, 660 F.2d 132 (5th Cir.1981) (warrant authorizing search for "drug trafficking, paraphernalia, records, money, or other evidence of drug trafficking" is not so general as to constitute an unconstitutional general warrant); United States v. Caves, 890 F.2d 87 (8th Cir.1989) (same where warrant authorized search for "controlled substances"); United States v. Hernandez-Escarsega, 886 F.2d 1560, 1567 (9th Cir.1989), cert. denied, 497 U.S. 1003, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990) (warrants authorizing seizure of currency were not overbroad where based on narcotics agent's affidavit portraying defendant as narcotics kingpin); United States v. Calisto, 838 F.2d 711, 716 (3d Cir.1988) (well established that firearms may be considered items used in connection with controlled substances)
 
 
 [2]
 Our review of the magistrate's probable cause determination is identical to the highly deferential standard of review we hold should have been applied by the district court. United States v. Jones, 994 F.2d 1051 (3d Cir.1993). Accordingly, our review of the district court's conclusion regarding the propriety of the magistrate's probable cause finding is plenary. Id. at n. 5
 There are no relevant disputes of fact regarding the issue of whether the executing officers acted in objective good faith and our review of the district court's conclusion on that issue is plenary. See United States v. Bowling, 900 F.2d 926, 930 (6th Cir.1990) (good faith reliance of police reviewed de novo), cert. denied, 498 U.S. 837, 111 S.Ct. 109, 112 L.Ed.2d 79 (1990); United States v. Tedford, 875 F.2d 446, 447 (5th Cir.1989) (reviewing court accepts district court's finding of facts underlying its finding of good faith unless clearly erroneous, but ultimate determination as to good faith is a conclusion of law subject to de novo review) (citing United States v. Maggitt, 778 F.2d 1029, 1033 (5th Cir.1985), cert. denied, 476 U.S. 1184, 106 S.Ct. 2920, 91 L.Ed.2d 548 (1986)); United States v. Accardo, 749 F.2d 1477, 1481 (11th Cir.1985) (ultimate question of good faith is legal issue which appellate court may resolve), cert. denied sub nom. Pinckard v. United States, 474 U.S. 949, 106 S.Ct. 314, 88 L.Ed.2d 295 (1985); United States v. Sager, 743 F.2d 1261, 1265 (8th Cir.1984) (application of objective good faith standard is "more akin to the application of a new legal criterion to the same facts, than it is to the decision of a new question of fact"), cert. denied 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985).
 
 
 [3]
 Gates upheld the validity of a warrant issued in partial reliance on an anonymous tip from an informant with whom the police had no prior experience. "While a conscientious assessment of the basis for crediting [anonymous] tips is required by the Fourth Amendment," the Court stated, "a standard that leaves virtually no place for anonymous citizen informants is not." 462 U.S. at 238, 103 S.Ct. at 2332
 
 
 [4]
 See Leon, 468 U.S. at 923, 104 S.Ct. at 3420-21. In United States v. American Investors of Pittsburgh, Inc., 879 F.2d 1087 (3d Cir.1989), cert. denied 493 U.S. 955, 110 S.Ct. 368, 107 L.Ed.2d 354 (1989), and cert. denied sub nom. Bruno v. United States, 493 U.S. 1021, 110 S.Ct. 721, 107 L.Ed.2d 741 (1990), we set out the four situations in which Leon's good faith exception does not apply:
 (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit (citing Franks v. Delaware, 438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (1978));
 (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function (citing Lo Ji Sales, Inc. v. New York, 442 U.S. 319 [99 S.Ct. 2319, 60 L.Ed.2d 920] (1979));
 (3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" (quoting Brown v. Illinois, 422 U.S. 590, 610-11 [95 S.Ct. 2254, 2265, 45 L.Ed.2d 416] (1975) (Powell, J., concurring)); or
 (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized (citing Massachusetts v. Sheppard, 468 U.S. 981 [104 S.Ct. 3424, 82 L.Ed.2d 737] (1984)).
 879 F.2d at 1106-07.