

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-6-2004

# USA v. Brown

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2519

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Brown" (2004). *2004 Decisions.* Paper 868.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/868

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2519
_____

UNITED STATES OF AMERICA

v.

ORUSTU B. BROWN
a/k/a TJ

Orustu B. Brown,

Appellant

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Crim. No. 02-cr-00236)
District Judge:  Honorable Sylvia H. Rambo
_____

Submitted Under Third Circuit LAR 34.1(a)
December 15, 2003

Before:    ROTH, MCKEE AND ROSENN, <u>CIRCUIT JUDGES</u>

(Filed: April 6, 2004)
_____

OPINION
_____

Roth, <u>Circuit Judge</u>

Appellant Orustu B. Brown was charged in a one count indictment with intent to distribute more than 5 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). The charge in the indictment was based on evidence seized from Brown by the York City Police on August 9, 2002, during a search incident to an arrest. The initial stop and arrest of Brown was made pursuant to an outstanding arrest warrant naming Brown as a suspect for robbery. The robbery charges were later withdrawn. Brown filed a motion to suppress evidence, asserting that the warrant was lacking in indicia of probable cause. After conducting a suppression hearing, the United States District Court for the Middle District of Pennsylvania denied the motion.[1] Brown appeals. We will affirm.

The facts that led the police to obtain the arrest warrant against Brown are as follows. On July 11, 2002, at approximately 9:00 a.m. the Allfirst Bank at 800 East Market Street, York, Pennsylvania, was robbed by two gunmen. The robbers had gained access to the bank prior to its opening, at which time they emerged from their hiding places and overcame the tellers. Each robber wore a black jumpsuit, colored latex gloves, and a nylon mask. One of the firearms carried by the robbers was a large caliber black revolver with a wooden grip. The other gun was a silver pistol with a bright orange safety. Upon exiting the bank, one robber removed his mask and was seen by a customer,

---

[1] The District Court also denied Brown's subsequent motion to reconsider. The District Court did not abuse its discretion in denying the motion. See United States v. Herrold, 962 F.2d 1131 (3d Cir. 1992) (stating standard of review).

2

Edith Smith. The robbers escaped in a maroon Honda with approximately $400,000.00. The Honda, later determined to be stolen, was found approximately twenty minutes later, abandoned.

During the investigation into the robbery, a teller at Allfirst Bank, Bilan Nelson, became a target of inquiry. She was interviewed on July 11, July 23, and August 2, 2002. Nelson informed the police in her July 11 interview that a prior boyfriend of hers, a Baltimore County Police Officer named Ivory Bing, had discussed committing a bank robbery. Nelson mentioned Bing again in the July 23 interview.

Prior to Nelson's August 2 interview, the police interviewed an informant, Adrien Fallings. Fallings related to the police that he, Brown, and DeCarlo Pickney met in Bilan Nelson's apartment to plan the robbery and that Nelson provided Brown with a key to the bank. At the time that the robbery occurred Fallings was in prison. However, he related to the police that either Brown or Pickney had contacted him after the robbery and described how the robbery occurred. Fallings described the two guns used by the robbers as a silver semi-automatic with an orange safety, and a black gun with a wooden grip. According to Fallings, the robbers used latex gloves and nylon masks, fled the bank in a stolen maroon Honda, and later ditched that vehicle. The information related by Fallings matched the details of the actual robbery. None of the details had been published or otherwise made available to the public. After interviewing Fallings, the police tried to contact the bank customer who had seen the face of one of the gunmen, but she was out

3

of town.

The police subsequently interviewed Nelson for a third time. She admitted that she had met with a "KC" and a "TC" prior to the robbery and that she had given "TC" a key to the bank.[2] She claims that she did not know anyone by the name of Orustu Brown, a/k/a "TJ," DeCarlo Pickney, or Adrien Fallings. Nelson was otherwise uncooperative.

Based on the information obtained from Fallings, an arrest warrant was issued for Brown on August 3, 2002, charging him with the July 11 robbery and conspiracy. The affidavit of probable cause to support the arrest warrant stated that "[a]ll the above information was provided as 1st hand knowledge from a reliable confidential informant who will be available for testimony at all court proceedings."

After the arrest warrant had been issued, but before Brown's August 9, 2002 arrest, certain other information became known to the police. First, a latent fingerprint lifted from the getaway car was positively identified as belonging to Kevin Carl Randolph. Second, Edith Smith, the bank customer, identified Tobias Cunningham from a photograph as the individual she had seen exiting the bank on July 11. In her August 2 interview, Nelson had admitted giving "TC" a key to the bank.

On appeal, Brown claims that the warrant itself, and the execution of the warrant, were so deficient that the police could not have been acting in good faith and that the evidence seized should have thus been suppressed. See United States v. Williams, 3 F.3d

---

[2] "TC" is Tobias Cunningham. "KC" is Kevin Carl Randolph.

4

69, 72 (3d Cir. 1993). He presents four arguments in support of his claim. We will address each in turn.

First, Brown claims that the statement in the affidavit of probable cause regarding the informant's first hand knowledge was false because Fallings did not participate in the robbery. We agree with the District Court that Detective Cromer did not knowingly and deliberately, or with reckless disregard for the truth, make a false statement when applying for the warrant. See Franks v. Delaware, 438 U.S. 154 (1978) (explaining the standard used when analyzing a challenge to the validity of a search warrant based on a false affidavit). While Fallings could not have participated in the robbery, he claimed to have obtained his information directly from the source. Specifically, the source in this case was the meeting in which he and several others planned the robbery as well as the telephone call he received after the robbery in which one of the perpetrators explained how the robbery went down. Fallings thus relayed first hand knowledge.

Second, Brown claimed that the warrant did not sufficiently convey the reliability of the informant. We agree with the District Court that the clause "from a reliable confidential informant," when read in conjunction with that which precedes it, "[a]ll of the above was provided with 1st hand knowledge," bolsters Detective Cromer's conclusory statement set forth in the affidavit regarding the informant's reliability. The affidavit's recitation of the informant's availability to have his veracity tested at all court proceedings also bolstered the reliability of the informant's information. Thus, a

5

reasonable magistrate could well conclude that the affidavit offered substantial evidence supporting the reliability of the information contained therein. See Williams, 3 F.3d at 72 (3d Cir. 1993) (considering the reliability of an anonymous informant).

Third, Brown claims that the veracity of Adrian Fallings' accusations against Brown were not corroborated.[3] The lack of corroboration, however, did not undermine the fact that, based on the information that Fallings related to the police, probable cause existed to issue an arrest warrant for Brown. See Williams, 3 F.3d 72 (applying a common sense, totality of circumstances approach to determine whether a magistrate judge properly concluded that probable cause exists to issue a warrant).

Finally, Brown claims that the arrest warrant was not executed in good faith because after the warrant had been issued, but prior to the execution of the warrant, Edith Smith identified Tobias Cunningham as one of the banks robbers and Kevin Carl Randolph's fingerprint was found in the getaway car. This argument lacks merit. The photographic identification of Tobias Cunningham and the fingerprint identification of Randolph were not so exculpatory of Brown and DeCarlo Pickney as to undermine the evidence of their involvement provided by Fallings. In fact, Detective Cromer testified at the suppression hearing that the arrest warrant was not invalidated because (1) Randolph's fingerprint in the stolen getaway car placed him only in the car, not in the

---

[3] This argument does not appear to have been clearly presented to the District Court. A review of the suppression hearing transcript, however, shows that defense counsel did question Detective Cromer regarding the lack of corroboration.

6

bank as one of the principals committing the robbery; (2) assuming that Tobias Cunningham was one of the gunmen who robbed the bank, Brown still could have been the other gunman; and, (3) Fallings' information was nonetheless reliable because he had implicated himself in a robbery in which he had not been a suspect and had provided details which had not been released to the public. Additionally, Detective Cromer was aware that Fallings had previously provided accurate information to other York police officers through his partner, Detective Scott Nazdom, and his partner's former partner, Detective Matt Luchko.

Accordingly, we will affirm the order of the District Court denying Brown's motion to suppress.