

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-8-2006

# USA v. Almond

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3683

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Almond" (2006). *2006 Decisions.* Paper 230.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/230

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-3683

———


UNITED STATES OF AMERICA

v.

DARU ALMOND,
                                  Appellant


———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-00055)
District Judge: Honorable Cynthia M. Rufe


———

Submitted Under Third Circuit LAR 34.1(a)
November 6, 2006

Before: SLOVITER, CHAGARES, and NYGAARD, Circuit Judges

(Filed : November 8, 2006 )

OPINION

———

SLOVITER, Circuit Judge.

Daru Almond appeals from the order of the District Court denying his motion to suppress evidence obtained from a search warrant. This appeal is limited to review of that order.[1]

Almond pled guilty to possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), preserving his right to appeal the denial of the motion to suppress. He was sentenced to 120 months imprisonment, a $2,500 fine, eight years of supervised release, and a $200 special assessment.

Almond challenges both the action of the Magistrate Judge in issuing the search warrant and the order of the District Court denying the motion to suppress.

The Magistrate Judge issued the contested search warrant for Almond's house on Sixteenth Street in South Philadelphia based on an affidavit that contained information that two Philadelphia police officers, Louis Gregg and Raymond Tancredi, separately responded to an anonymous tip that a man, described as a black male with braided hair, wearing jeans and a grey jacket with black sleeves, had a gun on Tasker Street. When the officers approached a man matching that description, later identified as Almond, he began to run. Gregg observed a "black handled handgun" in Almond's waistband as

---

[1]This court has jurisdiction under 28 U.S.C. § 1291.

Almond ran. Supp. App. at 2. Almond ran into a house on Sixteenth Street and locked the front door. The house was later identified as his residence. The police secured the property until they received the search warrant. A short time thereafter, Almond surrendered into police custody. After receiving the search warrant, police recovered four handguns, seven grams of crack cocaine, a bullet-proof vest, narcotics packaging material, and $17,657 cash.

Almond filed a motion to suppress the evidence obtained from the search warrant. At the suppression hearing, Gregg and Tancredi, along with one defense witness, testified. Based on the evidence presented, the District Court found that the affidavit presented to the Magistrate Judge contained a substantial basis for finding probable cause to search Almond's residence. The District Court credited Gregg's testimony that he saw a gun with a black handle in Almond's waistband before Almond ran into his house and locked the door before either Gregg or Tancredi had reached it. Although Tancredi did not see a weapon, he did see Almond push his hand into his waistband, at least two times, which led him to believe that Almond was hiding a weapon. The District Court denied the motion to suppress.

This court reviews factual findings of the District Court's denial of a motion to suppress for clear error, and we exercise plenary review of its application of the law to those facts. United States v. Riddick, 156 F.3d 505, 509 (3d Cir 1998). In deciding whether the affidavit for the warrant establishes probable cause, the Magistrate Judge

should consider all of the circumstances set forth in the affidavit and make a common sense determination. United States v. Williams 3 F.3d 69, 72 (3d Cir. 1993). Even if the affidavit is not supported by probable cause, evidence will not be suppressed, under a "good faith" exception, if the police acted in good faith when executing the warrant. Id. at 73-74. We have stated that "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Id. at 74 (citations and internal quotation marks omitted).

Almond argues that the search warrant was not supported by probable cause for two reasons. First, that no negative inference should be made from the fact that Almond ran from the police. Second, that Gregg could not have seen the gun, and the District Court erred in making this finding. Almond also contends that even if Gregg saw a gun, Gregg did not know whether Almond had a license to carry the gun. Therefore, there was no basis to believe that any laws had been violated.

Almond's arguments do not address the legal issue, which was whether the search warrant itself, considering the totality of the circumstances, was supported by probable cause. The facts necessary to support the search warrant arise not only from Almond's flight and the observation that he had a gun, but also from the fact that he resided in the house he entered, that his possession of a firearm was a violation of his parole, and that he did not have a license to possess a firearm.

Almond argues vigorously that Gregg did not see the gun, but the District Court's

finding of fact is reviewed for clear error. Although Almond asserts that Tancredi was closer to Almond, both officers testified consistently that they were approximately next to each other. Almond also asserts that Tancredi had a better view of Almond because he was "coming from the side." Almond's Br. at 11. However, Almond was running away from Tancredi, so it would be natural to assume that Almond had his back to Tancredi. Gregg was to the left of Tancredi and Almond, heading at an angle towards Almond, and would have had a frontal view of Almond when he turned. Gardner, the defense witness, corroborated both Gregg's and Tancredi's testimony as to Almond's location and direction. Finally, Almond does not contest the assertion that he turned to look at Tancredi. In sum, there is no basis to the claim that Gregg was mistaken or lying when he testified that he saw Almond's gun. The District Court did not clearly err when it made this finding.

Almond contends that even if Gregg saw the gun, "[t]here is no indication that the officers knew who the Appellant was, or whether or not he had a license to possess a firearm[.]" Almond's Br. at 12. The Government responds that a license to carry a firearm is an affirmative defense to a weapons charge, so that the police were justified in searching unless Almond proved that he had the license. Again, Almond's argument is without merit. Almond conceded at the hearing that if Gregg saw the gun, the warrant was proper.

The search warrant was clearly supported by probable cause. The affidavit stated

that a man matching the description from an anonymous tip was observed with a gun, that he ran into his residence, that he did not have a license for the gun, and that by possessing the weapon, he was in violation of his parole.

As the Government notes, acts that are innocent in isolation may collectively amount to a reasonable suspicion. United States v. Nelson, 284 F.3d 472, 480 (3d Cir. 2002). Similarly, we have held that furtive hand movements used to conceal a weapon were sufficient to support a finding of reasonable suspicion. United States v. Moorefield, 111 F.3d 10, 14 (3d Cir. 1997). We have also held that when an officer observed actions he reasonably believed to be intended to conceal a weapon, he was justified in searching for the weapon. United States v. Robertson, 305 F.3d 164, 170-71 (3d Cir. 2003). It follows that the Magistrate Judge did not err in granting the search warrant.

Similarly, we reject Almond's argument that "the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." Almond's Br. at 14. There is no basis for this court to conclude that the District Court's findings of fact were clearly erroneous. The affidavit was sufficiently detailed and particularized, it relied on more than the allegation that Almond was armed and that he fled. It also included the claims that Almond did not have a license to possess a firearm, and that such possession was in violation of his parole. The District Court heard the testimony of the officers and found them credible. The District Court did not err in denying the motion to suppress.

6

For the reasons set forth, we will affirm the judgment of conviction and sentence.