**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1534
_____

UNITED STATES OF AMERICA

v.

EMORY HICKS,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court  No. 06-cr-00684
District Judge: The Honorable J. Curtis Joyner

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 13, 2012

Before: SCIRICA, RENDELL, and SMITH, *Circuit Judges*

(Filed: January 17, 2012)

_____

OPINION
_____

SMITH, *Circuit Judge.*

Defendant Emory Hicks is appealing the District Court's denial of his

motion to suppress physical evidence because the search warrant executed by the

police investigators allegedly lacked probable cause and the investigators did not act in good faith. We will affirm.

## I. BACKGROUND

In the summer of 2006, the Philadelphia police and a task force of the Federal Bureau of Investigation were searching for Malik Collins, who was wanted for, among other offenses, two separate murders in Philadelphia County. Collins was suspected of being a member of a drug distribution organization known as the Thompson University Gang (the "Gang"), which was based in the area of 29th and Thompson Streets in Philadelphia.

Philadelphia police detective Leon Lubiejewski, who was assigned to Squad 10 of the joint Philadelphia police/FBI task force, was responsible for seeking and arresting murder fugitives. On August 23, 2006, Lubiejewski met with FBI agent Nick Grill and Philadelphia police detective Rickie Durham, who were both assigned to Squad 2 of the task force, to discuss information they had regarding Collins. Grill and Durham told Lubiejewski that on approximately August 17, 2006, a reliable, confidential informant (the "Informant") saw Collins on a porch outside of a building at a specified address in Philadelphia (the "Building"), and that according to the Informant, Collins was presently hiding inside an apartment in the Building. The Building had two separate apartments, one on the first floor and another on the second floor, accessed by separate doors that open onto a shared

2

porch. Durham said that the Informant learned from another person (the "Secondhand Informant") that Collins entered the first floor apartment at the Building and that guns were present in that apartment.[1] At the time of the meeting on August 23, 2006, Lubiejewski believed that the Informant, not the Secondhand Informant, saw Collins enter the first floor apartment.

Following the meeting, Lubiejewski began drafting an affidavit in support of a warrant to search the Building's first floor apartment. Lubiejewski consulted with Assistant District Attorney Ann Ponterio regarding his draft affidavit, and she advised him to obtain additional information regarding the Informant's reliability. Lubiejewski contacted task force members regarding the Informant's reliability, and he was told that the Informant provided information that led to the arrest of a fugitive and that the Informant had also been supplying information regarding the Gang, including the names of Gang members and the methods of its operations.

Task force members also conducted surveillance of the Building. On August 24, 2006, Sergeant Gerald Grdinich, on two occasions, saw the same black male exit the Building's first-floor apartment, stand on the porch for a short time, and then return to the apartment. Grdinich was not able to identify the man but knew that he was not Collins.[2]

In the afternoon of August 24, 2006, Lubiejewski completed the affidavit in

---

[1] Lubiejewski did not know the identity or reliability of the Secondhand Informant.

support of his application for a search warrant of the Building's first-floor apartment and presented it to a bail commissioner. This affidavit stated, in pertinent part, that:

> On Wednesday, August 23, 2006, [Lubiejewski] met with members of the FBI drug enforcement task force who related that they have a reliable informant who advised them that he knows Malik Collins and that Collins is presently hiding inside of [the Building]. The informant relates that he was present on Thursday 8/17/2006 outside of [the Building] and saw the fugitive Malik Collins, standing on the front porch of that location for a short period of time *and then enter the first floor apartment of that duplex through a door on the front porch that is at the eastern end of the porch*. The informant has also spoken to an individual who has on-going contact with Malik Collins at this location and this person has said that there are a number of guns being stored inside that apartment. (contd)
>
> The informant has given information in the last month that has led to the arrest of a fugitive inside of a location, who was wanted on an active arrest warrant. *The informant has admitted to being a member of the 29th and Thompson Sts. drug organization* and has been supplying Federal agents with the names of individuals belonging to the organization, locations used by the organization and methods of operation of the organization.
>
> *    *    *
>
> Members of the Philadelphia Police Department and the FBI conducted a joint surveillance of [the Building] beginning on the evening of 8/23/06 thru the afternoon of 8/24/06, and during that period of time, a [black male] was observed twice, looking out of the front door, looking in both ways up and down the street and going back inside.

(emphasis added). Lubiejewski never asked Grill or Durham to review his

---

[2] This man was later determined to be Hicks.

affidavit for accuracy prior to presenting it to the bail commissioner. The bail commissioner found probable cause for the search and issued the warrant.

On August 25, 2006, police officers and FBI agents executed the search warrant at the Building's first-floor apartment and found: three stolen handguns (two of which were loaded); an assortment of loaded magazines and loose rounds, a bulletproof vest; and drug paraphernalia. Hicks, who was the only person present in the apartment, was arrested and indicted on two counts: possession of a firearm after a prior felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); and possession of body armor after a conviction for a prior crime of violence in violation of 18 U.S.C. §§ 931 and 924(a)(7).

Hicks filed a motion to suppress the physical evidence found during the execution of the search warrant. Hicks argued that the search warrant was not supported by probable cause and the investigators did not rely on the warrant in good faith. The District Court held a hearing on the motion. Lubiejewski testified that, at the time he presented his affidavit to the bail commissioner, he believed that all of the information in his affidavit was fair and accurate.

Lubiejewski further testified that he later learned that his affidavit contained two incorrect statements. First, although the Informant did see Collins on the porch in front of the Building, he did not witness which apartment door Collins entered. Instead, it was the Secondhand Informant that saw Collins enter the

Building's first-floor apartment, and the Informant learned this information from the Secondhand Informant. Lubiejewski explained that the error occurred because he misunderstood the information relayed by Grill and Durham. Second, Lubiejewski's affidavit incorrectly stated that the Informant admitted to being a member of the Gang. Lubiejewski testified that the error was based on his false assumption that the Informant's familiarity with the Gang's members and operations must have been the result of his status as a member of the Gang.

After a hearing on the motion, the District Court held that the search warrant lacked probable cause but that the evidence was not subject to suppression because the investigators acted in good faith. Hicks was tried before a jury and convicted on both counts. Hicks appealed the denial of his suppression motion.[3]

## II. DISCUSSION

### A. PROBABLE CAUSE

The government argues that Lubiejewski's affidavit contained sufficient probable cause to support the warrant even after excising the two false statements, and that the District Court erred in holding to the contrary. A district court's findings of fact on a motion to suppress are reviewed for clear error, and its application of the law to the facts is subject to plenary review. *United States v.*

---

[3] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

*Brownlee*, 454 F.3d 131, 146 n.15 (3d Cir. 2006).

The task of a court in issuing a search warrant is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000). The duty of courts reviewing the issuance of a search warrant is to determine whether the issuing court had a "substantial basis" for concluding that probable cause existed for the search. *Gates*, 462 U.S. at 238-39; *see also Whitner*, 219 F.3d at 296.

The District Court did not err in concluding that, given the false statements in the affidavit, there was no substantial basis for determining that probable cause existed. Lubiejewski's affidavit, after excising the false statements, essentially states that, six days earlier, the Informant saw Collins standing outside of the Building, but that he did not witness which of the Building's two apartments Collins entered. Only the Secondhand Informant provided information stating that Collins entered the first-floor apartment and that Collins stored guns inside that apartment. The only indicium of reliability for the information provided by the Secondhand Informant is that this person allegedly has "on-going contact" with

7

Collins. Lubiejewski's excised affidavit, considered in its totality, does not provide a substantial basis for concluding that probable cause existed for the search of the Building's first-floor apartment.

Accordingly, the District Court did not err in holding that the warrant was not supported by probable cause.

## B. GOOD FAITH

Hicks asserts that the false statements in Lubiejewski's warrant affidavit were made with reckless disregard for the truth, and that consequently, the District Court erred by applying the good faith exception to the exclusionary rule. A district court's determination regarding whether a false statement in a warrant affidavit was made with reckless disregard for the truth is subject to a clear error standard. *United States v. Brown*, 631 F.3d 638, 642 (3d Cir. 2011).

Generally, where law enforcement officers objectively rely on a warrant in good faith, courts will not apply the exclusionary rule or otherwise suppress evidence obtained as a result of an unlawful search. *See, e.g.*, *United States v. Leon*, 468 U.S. 897, 922 (1984) (holding that evidence need not be suppressed where officers objectively and reasonably relied on a subsequently invalidated search warrant); *Herring v. United States*, 555 U.S. 135, 147-48 (2009) (finding that the exclusionary rule does not apply where an unlawful search is caused by isolated negligence that was not in reckless disregard of the Constitution).

8

A law enforcement officer who knowingly or recklessly provides false information in support of a probable cause affidavit does not act in good faith and that officer's reliance on any warrant issued based on such false information is not reasonable. *See, e.g.*, *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 146 (3d Cir. 2002); *United States v. Williams*, 3 F.3d 69, 74 n.4 (3d Cir. 1993). A statement is made with a reckless disregard for the truth when "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quotation marks and citation omitted).

The District Court did not clearly err in determining that the law enforcement officers acted without recklessness. Lubiejewski testified that the errors were the result of a miscommunication with Grill and Durham, and that he believed the information in his affidavit was true and accurate at the time that it was presented to the bail commissioner. Lubiejewski consulted with an assistant district attorney on several occasions regarding the sufficiency of his affidavit, and he sought to confirm the information in his affidavit by requesting surveillance of the Building. Consequently, the District Court did not clearly err in determining

9

that the officers acted without recklessness.[4]

Accordingly, we will affirm.

---

[4] Hicks also contends that the officers did not act with good faith because Lubiejewski's affidavit was allegedly so facially inadequate that a finding of probable cause was unreasonable. *See, e.g.*, *Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d at 146. We disagree. On its face, Lubiejewski's affidavit was based on information from the Informant, who was familiar with the operations of the Gang and who had provided reliable information in the past. The affidavit further stated that the Informant believed Collins was presently hiding in the Building and that the Informant witnessed Collins enter the first-floor apartment. Thus, Lubiejewski's affidavit, on its face, was not so facially inadequate that a finding of probable cause was unreasonable.