NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2101
_____

UNITED STATES OF AMERICA

v.

BRUCE RAISLEY,

Appellant
_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. Criminal Action No. 1-09-cr-00790-001)
District Judge:  Honorable Robert B. Kugler
_____

Submitted Under Third Circuit LAR 34.1(a)
March 9, 2012
_____

Before:  McKEE, Chief Judge, SCIRICA, and AMBRO, Circuit Judges

(Opinion filed: March 09, 2012)
_____

OPINION
_____

AMBRO, Circuit Judge

A jury found Bruce Raisley guilty of computer fraud in violation of 18 U.S.C.

§ 1030 & § 2.  On appeal, Raisley claims the District Court erred by not suppressing

materials seized during a search of his home.  In addition, he argues the District Court

1

made several other erroneous evidentiary rulings that require us to reverse his conviction. For the reasons that follow, we disagree and thus affirm.

## I.

Because we write solely for the parties, we set forth only those facts necessary to our decision. Raisley was once a volunteer for the organization "Perverted Justice." The group uses the internet to seek out sexual predators and expose them to the public. Group members assume fake online personas, pretending to be minors, and then conduct explicit online conversations with adults. Once the adult is identified, Perverted Justice posts the individual's identity and a copy of the text of the online chats on the group's website.

Eventually Raisley began voicing his disapproval of the group's "vigilante" tactics. The group's founder, Xavier Von Erck, responded by using those very tactics against him. Von Erck posed as a woman named "Holly," started an explicit online relationship with Raisley, and convinced Raisley to meet "Holly" one day at the airport. When Raisley arrived, flowers in hand, he was met with photographers. Von Erck posted pictures of the encounter and Raisley's conversations with "Holly" online.

In September 2006 and July 2007, Radar and Rolling Stone magazines published articles about Perverted Justice and its questionable methods, specifically mentioning Raisley and his ordeal with Von Erck. In response to this embarrassing publicity, Raisley took matters into his own hands.

Armed with a background in computer programming, Raisley created a "malware" program and introduced it to the internet where, as intended, it spread to thousands of computers worldwide. Raisley then used this infected network of computers to launch

2

"Distributed Denial of Service" ("DDOS") attacks against websites that published the Radar and Rolling Stone articles. A DDOS attack uses multiple computers simultaneously to request information from a website. If done on a large enough scale, the requests overwhelm the website, take the victim server off line, and render the site inaccessible.

The websites for Rolling Stone, Radar, and the Rick A. Ross Institute of New Jersey ("RRI"), among others, published copies of one or both of the articles about Perverted Justice and Raisley and later experienced DDOS attacks. As a result, the websites became disabled or the content became unavailable due to overwhelming attempts to access the sites.

In November 2007, RRI communicated with the FBI to complain about the DDOS attacks. The FBI investigated and later carried out a search warrant at Raisley's home. During that search, agents seized computers, portable computer storage, and a Rolling Stone magazine containing the article about Raisley, which had been flagged with a post-it note. Raisley told the FBI agents executing the warrant that: (1) "everything [the FBI] needed was on the thumbdrive that [they] had recovered from his home," (2) he had written the code that "was on that thumbdrive," (3) he used the code to "attack" "the rickross.com websites," and (4) "he didn't mean to hurt anybody, he just wanted them to take his name off their sites." Searches of Raisley's computers and the thumbdrive yielded substantial evidence linking him to the DDOS attacks, including the malware program and its source code.

3

In August 2008, Raisley, accompanied by his attorney, attended a proffer session with the Government. During that session, Raisley admitted that he launched DDOS attacks against rickross.com, but he failed to reach an agreement with the Government.

Raisley was later charged in a Superseding Indictment with one count of computer fraud for damaging the RRI's web servers, in violation of 18 U.S.C. § 1030 & § 2. Raisley moved to suppress the evidence seized from his home, but the District Court denied his motion. A jury found Raisley guilty and the Court sentenced him to 24 months' imprisonment, followed by 3 years of supervised release. He was also ordered to pay $90,386.39 in restitution. Raisley appeals his conviction.[1]

II.

A.

Raisley claims the District Court erred by denying his motion to suppress, arguing that the search warrant executed at his home did not describe with particularity the items to be seized and lacked other important information. When reviewing a district court's ruling on a motion to suppress, we exercise plenary review over the court's legal conclusions and review its findings of fact for clear error. *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010).

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Generally, if

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

4

an officer conducts a search pursuant to an invalid warrant, a court will exclude from trial any evidence obtained from that search. However, if an officer conducts such a search in good faith and in objectively reasonable reliance on the warrant's authority, a court will not suppress the evidence obtained. *United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1994).[2]

In order to determine whether this good faith exception to the exclusionary rule applies, we ask " 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.' " *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999) (quoting *Leon*, 468 U.S. at 922 n.23). "Ordinarily, the 'mere existence of a warrant . . . suffices to prove that an officer conducted a search in good faith,' and will obviate the need for 'any deep inquiry into reasonableness.' " *United States v. Stearn*, 597 F.3d 540, 561 (3d Cir. 2010) (quoting *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)). We must also keep in mind that "the exclusionary rule should only be applied when . . . police conduct is 'deliberate, reckless, or grossly

---

[2] "Under *Leon*, if a motion to suppress evidence obtained pursuant to a warrant does not present a Fourth Amendment argument that should be decided in order to provide instruction to law enforcement or to magistrate judges, it is appropriate for a reviewing court to turn 'immediately to a consideration of the officers' good faith.' " *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars And Fifty-Seven Cents*, 307 F.3d 137, 145 (3d Cir. 2002) (quoting *Leon*, 468 U.S. at 925). Here, Raisley's arguments about whether the warrant violated the Fourth Amendment do not "involve novel questions of law whose resolution is necessary to guide future action by law enforcement officers and magistrates[,]" and we therefore turn directly to the good faith issue. *Id.* (quotations and alterations omitted). Although the District Court did not reach that issue, we may affirm on a good faith ground nonetheless. *See United States v. Goodrich*, 450 F.3d 552, 553, 558 (3d Cir. 2006).

5

negligent,' or when it will deter 'recurring or systemic negligence.' " *Tracey*, 597 F.3d at 151 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)).

We have identified four "narrow" and "rare" scenarios in which an officer's reliance on a search warrant would not be reasonable. *Stearn*, 597 F.3d at 561 & n.19. Raisley relies on one of these situations, claiming that "the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." *Tracey*, 597 F.3d at 151.

The executing agents' reliance on this warrant was objectively reasonable for several reasons. First, the description of the items to be seized was detailed. It explicitly referenced aspects of the case and covered evidence relating to a DDOS attack. "Read as a whole," it "did not authorize an exploratory rummaging." *Id.* at 154. Second, the search warrant affidavit (though unincorporated into the warrant itself) was very comprehensive, and included a host of details about the investigation, the offense, and the items to be seized. Third, the FBI agent who drafted the affidavit conducted the search and was therefore obviously aware of the affidavit's details and scope, and conducted the search in conformity with the affidavit. *Id.* at 153. Finally, two Assistant United States Attorneys reviewed the warrant before a neutral Magistrate Judge approved it. This review process would give a "reasonable officer . . . confidence in the validity of the warrant." *Id.* Because reliance on the warrant was objectively reasonable, the District Court did not err by denying Raisley's motion to suppress.

6

B.

Raisley also challenges three of the District Court's other rulings concerning the admission and exclusion of evidence. He claims that each of the Court's rulings is so erroneous as to justify reversing his conviction. In addition, Raisley argues that the cumulative effect of the three rulings deprived him of a fair trial. We review each of those evidentiary rulings for abuse of discretion. *United States v. Mathis*, 264 F.3d 321, 326-27 (3d Cir. 2001). We review the claim about the cumulative effect of the Court's rulings for plain error, as Raisley raises the issue for the first time on appeal. *United States v. Christie*, 624 F.3d 558, 567 (3d Cir. 2010).

First, Raisley argues that the District Court abused its discretion by allowing evidence of his contemporaneous DDOS attacks against websites other than the RRI's website. He claims that, under Federal Rule of Evidence 403, the probative value of this evidence of uncharged crimes "is substantially outweighed by the danger of unfair prejudice." We note that the District Court's "discretion is construed especially broadly in the context of Rule 403." *Mathis*, 264 F.3d at 327; *see also United States v. Balter*, 91 F.3d 427, 442 (3d Cir. 1996) ("If judicial restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal.") (quoting *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988)).

Evidence of the other attacks was highly probative. It corroborated the attack on the RRI's website. It showed how a DDOS attack worked, Raisley's method in configuring and launching an attack, and the effects of the DDOS attacks. And it showed the common motive behind all the attacks — Raisley's desire to destroy any website that

7

posted the embarrassing articles about him. Nevertheless, Raisley claims that this evidence created unfair prejudice that substantially outweighed its probative value because it took the focus away from the actual offense charged (the attack on the RRI's website) and inevitably placed him on trial for acts he was not charged with committing (the attacks on other websites).

The District Court obviated any danger of unfair prejudice by repeatedly instructing the jury that it could consider the evidence of the other attacks only for the very limited and proper purposes it explained. *See United States v. Lee*, 612 F.3d 170, 185, 190-92 (3d Cir. 2010) (holding that limiting instruction reduced possible prejudice). In addition, given the overwhelming evidence that Raisley attacked the RRI's website, any conceivable error in admitting evidence of Raisley's simultaneous DDOS attacks on similar victims was harmless. *See Christie*, 624 F.3d at 571. In short, the admission of evidence of Raisley's attacks on other websites did not create reversible error.

Next, Raisley complains that the District Court erred by excluding certain evidence about his feud with Von Erck, specifically his belief that Von Erck used a picture of Raisley's son to lure online pedophiles and that Von Erck sent a pipe bomb to Raisley's home. Applying our deferential standard of review, we conclude that the District Court did not abuse its broad discretion in determining under Rule 403 that these areas were irrelevant to the core issue of whether Raisley attacked the RRI's website and were likely to cause confusion, prejudice, and time-consuming mini-trials.

Finally, Raisley argues that the District Court abused its discretion by admitting his statements, made during his proffer with the Government, that he attacked the RRI's

8

website. Proffer agreements are contracts, and their "terms must be read to give effect to the parties' intent." *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008). When considering a defendant's waiver under a proffer agreement, we exercise plenary review over the district court's "interpretation of the terms of the waiver," and we review admission of the proffered statements for "abuse of discretion." *Id.*

The District Court did not err in interpreting the proffer agreement, which provided that "[t]he government may use [Raisley's] statement and any information provided by [him] to cross-examine [him] and to rebut any evidence or arguments offered on [his] behalf." We have explained that the terms of an identical waiver provision are "expansive[,]" and that they allow the use of proffer statements "to rebut *any* evidence or arguments" offered on a defendant's behalf. *Id.* (emphasis in original). During his proffer, Raisley admitted that he attacked the RRI website. In his opening statement at trial, however, his defense counsel told the jury that "Mr. Raisley did not attack the Rick Ross website." Because of the clear contradiction between Raisley's proffer statement and his opening statement at trial, the District Court did not abuse its discretion by admitting Raisley's proffer statement.

Nevertheless, Raisley argues that the District Court abused its discretion because admission of the proffer statement is inconsistent with his right to a fair trial because he could not assert any defense at trial without opening the door to the proffer session. We disagree. Among other things, Raisley could have argued that the "facts put in evidence by the prosecution are insufficient to permit the jury to find the elements of the crime proved." *United States v. Barrow*, 400 F.3d 109, 119 (2d Cir. 2005). As the District

9

Court correctly found, had Raisley merely argued to the jury that "a not guilty plea means he has a right to a trial" and that the jury should "hold the government to its burden," he would not have triggered the waiver.

Because none of the evidentiary rulings raised by Raisley was erroneous, either by itself or cumulatively, he cannot carry his heavy burden of showing that the District Court plainly erred by not s*ua sponte* raising and sustaining a cumulative error challenge at trial.

\* \* \* \* \*

For the reasons discussed, we affirm the judgment of the District Court.

10